Okay, let me please the court. My name is Matthew Weber for the petitioner in this matter. Can you please speak up and maybe a little more slowly? I have a very bad cold, I'm sorry. Get a cup of water then. I am. Okay. This case is an appeal of a final order of the BIA holding that Velazquez-Herrera, a long-time lawful permanent resident, is deportable for having been convicted of a crime of child abuse. In this case, the bond is having been convicted by plea under the Washington Misdemeanor Assault Statute. The agency, or the statute, does not define child abuse specifically, and the BIA has never provided a succinct definition of that. But it's clear by the plain reading of the statute, the elements of the crime of child abuse would be the crime that is abuse of a child. Therefore, the issue in front of the court is did he plead guilty to a crime, which is abuse of a child. Respondent, or excuse me, the petitioner pled guilty to, by plea, to unlawfully touching someone in Clallam County on May 5, 1998. The information, this had a long prior criminal history, but there were two third amended informations, which went back and forth. But both of them, it's kind of a red herring, both of them state that he pled to the bare elements of the statute. So the judgment included, under the modified categorical approach, states that he pled to a fourth degree assault. Now, both of these elements of child abuse, whether the victim was a child, and whether the crime was abusive in nature, would be a floor. So the government, in order to prove this, would have to show either under the categorical or modified categorical approach the crime he pled to was a crime of child abuse. We argued quite succinctly that without some either categorically under the modified categorical approach showing that a child was harmed, that it cannot, the government cannot meet its burden under would be of clear convincing and unequivocal evidence that. Now, do you get your harm requirement from the definition in Rodriguez-Rodriguez? From Rodriguez-Rodriguez. And in this Court, in the later case, Locust-Solis, some 11th Circuit, they all decided that to be abusive, it has to be harm of some sort, mental, physical, or anything. Physical, moral, or mental harm? Some type of harm, yes. All right. And your client pled guilty to unlawful touching of a child. Of someone. Of someone. We know it's a child because we can see that from the record. We infer it was, but the record doesn't show. The record showed that it was a child. The record said conviction. And in Washington law, State v. Kinsvogel, cited by the government, it says there's three definitions of criminal assault recognized in Washington. And the second one is an unlawful touching of another with criminal intent. Correct. And that's essentially what your client pled to? He pled to unlawfully touching someone. The criminal intent obviously would be the intent to touch the person. Because it's redundant. It's unlawful. It's made unlawful by being unwanted or by being offensive. So it's the intent to touch. It isn't accidental touching or negligent touching. We wouldn't go there. I don't think it, in fact, would, under our position, I don't think it would matter. Because I think the analysis is dependent upon the victim of that. Cruel intentions that do not abuse a child would not be child abuse. They may be criminal. They may be vile. They may be worthy of societal sanctions. But they would fit under another category. Crime cannot be child abuse unless a child is actually abused. That's a different word than harmed. Well, correct. And I think how can we define child abuse without looking at what we're trying to protect and what we are penalizing, what the society is making criminal? This Court has dealt with a similar issue in Parilla, the Washington Statute for Communication with a Minor for Immoral Purposes, in which case there's no showing required that a child was actually abused or there were any problems. It was not sexually abused, although it seems like there was an invidious intent. In that case, the Court held that it was not sexual abuse of a minor, because based on that, that it was divisible. It seems clear that the Court, the definition of abuse in this Court, it made a very long and thorough analysis in Lopez-Solis in a criminal context, on the criminal definition of sexual abuse of a minor, and they went to the abuse concept and the definition of harm. Well, there's no definition of abuse of a child in the INA, is there? Of what? Of a child? Yeah. The crime. No. No. There's no definition of that. Crime of child abuse. No. So is the BIA entitled to deference in its definition of that crime? The BIA is entitled to deference, can be, if it's reasonable. I mean, under statutory, under this obviously Chevron deference, there's a lot of different issues. I think the thing is they've not held anything. In matter of Rodriguez-Rodriguez, they referred to abuse. That case was about sexual abuse of a minor. We don't even, in this case, we don't contest, we don't have any reason to contest the Rodriguez definition, which is the only one we've seen. It says any form of cruelty to a child's physical, moral, or mental well-being. Well-being requires that there be some kind of change in status or some type of harm ensue. Pure cruelty by itself, if the child is unaware or unhurt by it, could not be child abuse. Well, you actually have a definition before us in this case that the court finds that assault on a child is abuse, even if it is only a minor touching as comprehended by the statute because of the unfair advantage an adult has over a child, if it can be established that the assault is on a child. Now, is that interpretation? No, that's not. We would argue not entitled to deference at all. In fact, there was a case that just came down, I believe a few days ago, that said unless it's a precedent decision, that it's a precedent decision as part of the agency's rulemaking, that an issue like this is not entitled to deference. I'm sorry, I don't have that cite sitting on my desk. Well, then the BIA affirmed that. And you're saying that's not a precedent? That wasn't precedential? The BIA affirmed it. I believe it was an affirmance without opinion, which has no precedential value. And so we could see no way to argue the fact that this is the definitive agency determination. Should we remand to the agency in the first instance to say, to interpret that statutory provision? We would say no. We would say no, because this is an issue of law, a statute, and the Court is fully qualified to determine the statutory history. This is not an area of agency expertise adjudicating this. This is purely an issue of statutory construction of a state criminal law. Neither of these subjects, which are issues that the agency has any expertise entitled to deference. In this case, the interpretation of pure statutory issues and how a statute interacts with a criminal law is in the purview of the Federal courts. Well, is it possible for the BIA to have a broader interpretation of a crime of child abuse under the INA than what is defined in Washington law? Well, I think it would have to be consistent. It would be there's, remember, we have the rule of lenity in immigration context that statutes are construed strictly narrowly in favor of immigrants, deportation statutes. And this is what we've ran into in the similar context of sexual abuse, that the BIA tries to draw a very broad definition. But we would remind the Court that this is, in fact, a deportation with serious consequence in regarding a criminal statute. While child abuse is a very serious thing in here, and the issue is essentially the statutory interpretation, we see no reason why the agency needs to deal with this. When the Court, there's nothing to defer to, honestly, is what we would say. They have no expertise. Is it your understanding that the tailor-modified approach that we apply as to the kinds of documents or kinds of records that can be judicially noticed to give, to amplify what a bare charging document and the plea show, such as we have in this case, if there's other, we have identified other documents that the government may put forward which are properly referred to by the Court to give factual specificity to what the person actually pled to? Is it your understanding that whatever that range of documents that can be used transfers over to the immigration proceedings as well? Oh, absolutely. Absolutely. And could it be broader in the immigration context as the immigration proceedings are allowed to rely on hearsay, whereas in the criminal proceedings, where this all arose, that's not the case? No, not at all, because the rules in the actual hearing are different. There is no fact. The determination whether an alien is removable under a generic crime, a generic category for conviction of a generic crime, is not a factual issue. This is an issue of law. In this case, he admitted to certain things during the course of the immigration judge hearing. Do we just disregard that? I think the analysis of what he was convicted for, absolutely, and what Till Cotley has said in Till Cotley. No, but he admitted certain facts underlying that conviction separately in the immigration proceedings. Correct. I mean, I understand if there's, you know, application of straight tailor and modified tailor categorical approach, but I'm just saying if later in another proceeding he says, oh, yeah, that conviction was for unlawful touching and what I was doing was rubbing their breasts, that you have to disregard that? Correct. Because he is only deportable for what he was, for the conviction, not the action. The INA has grounds of removability, deportability for actions. For example, for engaging in, for admitting to using drugs, to being a known drug trafficker. These are factual grounds which are determined in the proceedings on facts. Isn't it rather a strange rule? It's in civil context now. And it's a statement which is admission under oath by the person, and yet we have to say it doesn't exist. Well, I think we don't have to say it doesn't exist. I think the distinction is he's only removable. The removable, he's only removable for what he was convicted for. Right. Those issues come in if he's applying for remission. But the issue is whether or not if he makes an admission under oath as to the act, and the act itself shows that the violation is such that it can be removed in a civil context, not a criminal context. It seems strange to me that we should just erase that. Well, I think, for example, a person is inadmissible to the United States for committing a crime of moral turpitude and for being convicted of one. Okay? Therefore, in the proceedings, if he admitted he committed one, he would be inadmissible for that ground. However, under these statutes, under the removal statutes, he is deportable for being convicted of a crime on that. In this case, it's not a factual inquiry. And I think that's what we're doing. Well, see, it's slightly different because you're right. The statute says he can be deported based on his conviction. I agree with that. So we have the conviction. And then he comes in and says, yes, that was a conviction for unlawful touching, and here's what I did. So you have more information about what it was that he did. And it's like you're saying the courthouse put blinders on because of that statute. But all he's doing is really explaining what was the nature of the conduct he was deported for, which is what we're looking at or trying to find out when we're doing the modified categorical approach normally. Normally, you don't have a situation like this where he comes in and says, I only admitted to unlawful touching, but what I really did was, you know, it's still being deported for the conviction. He's just giving you more facts surrounding the conviction. My time is running out, but I would like to say just to answer that, that in this context, there was a plea. Okay? He pled specifically to asserted elements. In doing that, what the court is doing is undermining the criminal process because the government could have charged him and went to trial and convicted him of other acts. We're not saying what he did or what he didn't. We don't choose our clients in this case. But I think the issue is there was an underlying plea here that said specifically and it's illustrative, I admitted, I unlawfully touched someone. Now, there was a reason. That was the agreement. So looking at factual issues of what actually happened would undermine that because that agreement obviously was made based on the immigration consequences. In the plea call, in the underlying case, if he had said what the act was then Yes. Without a doubt. Right in Taylor. That's the plea call. All right. Thank you. May it please the Court, Your Honors. Leslie McKay for the respondent. This case, as Your Honors know, boils down really to what is the definition of child abuse. And it's the government's position that the board's decision in Rodriguez which at least discusses the fact that the statute doesn't define child abuse and offers the definition from Blacks as any form of cruelty to a child's physical, moral, or mental well-being, that that's a reasonable interpretation of the statute. But how does this then conviction fall within it? How do we know that just a mere touching meets that standard? Your Honor, you know because in the judgment at page 319 of the record, the court ordered or discussed restitution to the child victim. So we know there was a child involved in this case. And at page 324 of the record in his statement on the guilty plea, we know he admitted to an unlawful touching. And our position is that any unlawful touching that rises to the level of an assault if it's committed on a child is child abuse. So that meets the, so even if it were? It would still be a modified categorical approach. A modified categorical. You think that that would do it? Yes, Your Honor. We would not argue based on the terms of this statute that the categorical approach applies. I don't think that that's a fair reading of the statute at all. But under the modified categorical approach, yes, we would assert that the facts of this case, not going beyond the documents in Taylor, even into the facts of the record, although I do think that Judge Callahan's dissent in Cisneros-Perez is instructive on this very point where she says, you know, in that case there was a similar admission by the alien that it was a family member. He put that on his application for relief. Here you have the petitioner testifying about the circumstances underlying his crime. You have them admitting those facts. And to completely ignore those, as Judge Callahan says, we drift toward creating legal determinations that are divorced from reality. Again, Your Honors, I don't think you need to go beyond the documents that Taylor identifies to reach the conclusion in this case that the petitioner has been convicted of a crime of child abuse. Under Washington law, what can constitute an unlawful tattoo? Your Honor, I think that under Washington law it's quite broad. And something under this statute I think even a slight touch, as long as it's offensive and intentional, could constitute. And, Your Honor, I'm sorry, I'm not aware of the precise parameters because I think that this is something that's defined by the State on a case-by-case basis. If it were spitting on a minor, the father spit on his child or another child, is it your understanding that that would qualify as a fourth-degree assault under Washington law? It's my understanding that that could qualify as a fourth-degree assault. So in this case, if all that Mr. Velazquez Herrera had done was spit on his daughter, you're saying we should still say that the Rodriguez-Rodriguez definition is sufficient and that under that concept, spitting would meet even Rodriguez-Rodriguez? Yes, Your Honor. And why is that? Because, again, the question is, does the unlawful touch rise to the level of an assault? And if it does and it's committed on a child, it's our position that that ---- By an adult. I'm sorry? By an adult. Yes, by an adult on a child. Yes. You're relying on the I.J. saying that and discussing the inherent power that an adult has. So if an adult is spitting on a child, it makes it different. And I think that that's ---- And I think that that's inherent in the concept of child abuse. I think that although it's not specifically discussed in the Blacks' definition, I think that that, in a real-world sense, when we think about child abuse, we think about an adult abusing a child. And so, yes, in this case, we have an adult who committed an ---- admits he committed an unlawful touching on a child, and even if it was something such as spitting which, again, Your Honors, we know that it wasn't spitting in this case. And what's a minor? How old do you ---- when you age out of being a minor under Washington law? I don't know that, Your Honor, and I apologize. Seventeen? I don't know. I would assume somewhere around there. So if an 18-year-old and a 15-year-old get in an argument and one spits, the older adult spits on the 15- to 17-year-old adult spits at the 15-year-old, that would qualify as abusive of a minor because he's an adult and he's superior position to the 15-year-old who happens, in this case, to be six inches taller. I'm just positing that's the problem we have under this categorical approach. You can posit spin-out ones that just don't fit. No, I understand that, and I think, you know, that this is certainly not ---- I don't think the answers are necessarily easy when you start to spin out all the hypotheticals, but I think that the Court's focus under Taylor and under the modified categorical approach has to be what does the record of conviction show and what is the definition of child abuse? And if the record of conviction shows, as it does in this case, we assert again, unlawful touching by an adult on a child fits within that generic definition of child abuse, then the charge of removability is sustainable. And I quickly wanted to address the issue of deference before I sum up. It's our position that the Board's decision in Rodriguez-Rodriguez is subject to Chevron deference. It's a precedential decision that was issued by the Board. The immigration judge and the Board's decision in this case, as I understand it, would not be subject to Chevron deference necessarily, but would be subject to deference under Skidmore. And I think that that ---- The decision in this case or in Rodriguez? The decision in this case, that the immigration judge's decision, which was reasoned, which had the benefit of considering what's a very voluminous record and had an opportunity to consider the issues in this case, made a reasonable decision, and that that decision is at least deserving of some deference or ---- And what about deference to Rodriguez? I'm sorry? You said that were you suggesting Chevron deference to Rodriguez? Yes, Your Honor, because that is a precedential decision that the Board issued. Should we remand for the BIA to ---- because the BIA did not. It adopted the INA, but it didn't exactly explain how it interpreted the term child abuse in the deportation statute. Correct. And, yes, Your Honor, I believe that if that's the direction the Court wants to head, if you think that a more full explanation is needed, that a remand is absolutely appropriate to, at minimum, give the Board an opportunity in the first instance to apply its expertise to the immigration statute. I realize that this is a criminal issue. However, it fundamentally ---- there's an issue of a criminal conviction, and whether the conviction meets a term within the Immigration and Nationality Act. Is there any authority in our ---- or any court that says that construing a statute, what a crime constitutes, is going to be different for purposes of immigration law? In other words, could we come up with a definition of child abuse, or BIA could, that's different from what it would be if this were a non-criminal, if this were a criminal case? I believe that there are certain terms that are defined differently, and I can't cite you to any particular authority. But I'm thinking of cases involving the concept of crime of violence with the sentencing guidelines versus crime of violence in the Immigration and Nationality Act. And those terms are defined a little bit differently. And are there cases where in the construction of crime of violence in the INA that we have given Chevron deference to that legal interpretation by the BIA? I don't know. I don't know. But I would certainly suggest that if the board issued a precedential decision defining a term in the Immigration and Nationality Act, that that definition or that decision by the board, because it was precedential, would be entitled to Chevron deference, even though the term may exist somewhere else in the criminal statutes. So I think you'd have to say that the INA has the special expertise to define child abuse in its statute, but then the courts would have to decide whether, say, the Washington statute fit the INA's construction of the language in the immigration statute. Exactly, Your Honor. And I apologize if I wasn't clear about that, but that was my point, that yes, remand would be appropriate to allow the board to define child abuse, which is a term within the INA. And it's not defined, unlike every other. Right. It's left undefined. It's not defined. And, in fact, anecdotally, I think it's not something that is actually used very often, or I haven't seen it very often. I see that my time is up. If there are further questions, thank you very much. Thank you. Thank you. Thank you both guys.
judges: Wallace, Wardlaw, Fisher